UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 17-CV-4987 (JFB) (SIL)

CHRISTOPHER BRADY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

VERSUS

TOP SHIPS INC., ET AL.,

Defendants.

**MEMORANDUM AND ORDER**
July 20, 2018

JOSEPH F. BIANCO, District Judge:

Presently before the Court are two competing motions, pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), requesting that the Court (1) consolidate two related securities class actions,[1] (2) appoint the movant as lead plaintiff, and (3) approve the movant's selection of lead counsel. The pending motions were filed in the instant action, which was the first of the related actions filed—one by Moshe Onel, Amardeep Sidhu, and Joel Sofer (collectively, the "Top Ships Investor Group") (ECF Nos. 42-44),[2] and the other by Mickey Nardiello and Zhenzhe Wang (collectively, "Nardiello and Wang") (ECF Nos. 45-47).

The Top Ships Investor Group and Nardiello and Wang filed their motions on behalf of a putative class of purchasers of TOP Ships Inc. ("Top Ships" or "the

---

[1] The two securities class actions are *Brady v. Top Ships Inc.*, E.D.N.Y, Case No. 17-cv-4987 (JFB)(SIL), and *Narine v. Top Ships Inc.*, E.D.N.Y, Case No. 17-cv-5016 (JFB)(SIL).

[2] All citations to the record in this case will be to the *Brady* docket, unless otherwise indicated. References to the *Brady* docket will be cited as "ECF No. [docket number]." References to the *Narine* docket will be cited as "*Narine*, ECF No. [docket number]."

Company") securities[3] during the period of defendants' alleged Exchange Act violations, spanning from January 17, 2017 to August 22, 2017 (the "Class Period").[4] Defendants include Top Ships, as well as Top Ships's Chief Executive Officer, President, and director, Evangelos J. Pistiolis, and Top Ships's Chief Financial Officer and director, Alexandros Tsirikos (together with Pistiolis, the "Top Ships Officer Defendants"), and Top Ships's underwriter, Kalani Investments Limited ("Kalani"), a hedge fund behind Kalani, Murchinson Ltd. ("Murchinson"), and the head of Murchinson, Marc Bistricer (together with Kalani and Murchinson, the "Kalani Defendants"). (Brady Compl. ¶¶ 5-12; *see also* Narine Compl. ¶¶ 13-20.)

First, because the Court finds that the two putative class actions present common questions of law and fact, and that consolidation would serve the interests of judicial economy, the Court grants the motions to consolidate. Second, based on its determination that (1) the Top Ships Investor Group has the largest financial interest, (2) this group has made the requisite preliminary, prima facie showing that it otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, and (3) the presumption under the PSLRA that the Top Ships Investor Group is "the most adequate plaintiff" to represent the class has not been rebutted, the Court appoints the Top Ships Investor Group as lead plaintiff. Finally, the Court approves the Top Ships Investor Group's selection of Pomerantz LLP ("Pomerantz") as lead counsel. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

I. BACKGROUND

A. The Securities Class Actions

Plaintiff Christopher Brady filed his complaint in this action on August 23, 2017, and plaintiff Karon Narine filed his complaint in *Narine* on August 24, 2017. As discussed *supra*, the complaints name the same defendants, which include Top Ships, the Top Ships Officer Defendants, and the Kalani Defendants. According to the complaints, Top Ships is an "international provider of oil, petroleum products and chemicals transportation services." (Brady Compl. ¶ 5; Narine Compl. ¶ 2.)

Plaintiffs allege in both cases that, through acts taken in furtherance of the alleged schemes, defendants intended to, and succeeded in, deceiving the investing public and artificially manipulating the price of Top Ships common stock. (Brady Compl. ¶ 79; Narine Compl. ¶ 86.) Plaintiffs claim that defendants violated the Exchange Act and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, in that they:

> (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of conduct which operated as a fraud and deceit upon the purchasers of Top Ships common stock . . . .

(Brady Compl. ¶ 80; Narine Compl. ¶ 86.) Plaintiffs allege that the price of Top Ships common stock had dropped to only $1.31 per share by August 17, 2017, compared with a price of over $20,000 per share early in the

---

[3] Top Ships's common stock is listed on the NASDAQ Stock Market ("NASDAQ") as "TOPS." (ECF No. 1 ("Brady Compl.") ¶ 5.)

[4] Plaintiffs in both actions propose the same class period. (Brady Compl. ¶ 1; *Narine*, ECF No. 1 ("Narine Compl.") ¶ 1.)

2

Class Period. (Brady Compl. ¶¶ 65-66; Narine Compl. ¶¶ 71-72.) Plaintiffs explain that, at the August 17 share price, the Company "only had a market capitalization of about *$2.5 million . . . despite having raised tens of millions of dollars from investors* since February 2017." (Brady Compl. ¶ 65; Narine Compl. ¶ 71.) Plaintiffs allege that "[t]his shocking erosion in shareholder value was the direct result of defendants' fraudulent scheme to manipulate the price of Top Ships common stock and induce purchases through the series of dilutive and manipulative stock offerings and reverse stock splits." (Brady Compl. ¶ 65; Narine Compl. ¶ 71.)

The complaints are nearly identical, describing the same alleged fraudulent schemes, acts, and events that occurred during the same class periods and allegedly resulted in the same stock price declines and damages to investors. Both complaints include the following claims: (1) violation of § 10(b) of the Exchange Act and Rule 10b-5 against all defendants (Brady Compl. ¶¶ 78-85; Narine Compl. ¶¶ 84-93), and (2) violation of § 20(a) of the Exchange Act against the Top Ships Officer Defendants (Brady Compl. ¶¶ 90-94; Narine Compl. ¶¶ 94-99). Additionally, the Brady complaint includes defendants Bistricer and Murchinson in the § 20(a) claim (Brady Compl. ¶¶ 90-94), and brings a claim for violation of § 9 of the Exchange Act against all defendants (*id.* ¶¶ 86-89).

With regard to defendants' specific acts, both complaints allege that Top Ships's CEO, Pistiolis, "caused Top Ships to engage in a series of manipulative share issuance/sales transactions with Kalani and related entities." (*Id.* ¶ 19; Narine Compl. ¶ 4.) The complaints provide the following summary of the alleged Exchange Act violations and "manipulative scheme designed to further enrich Pistiolis, Kalani and their associates":

Through his control of Top Ships, Pistiolis caused Top Ships to sell its common shares and securities convertible into common shares to Kalani at a significant discount to market price and to file registration statements so that Kalani could resell these shares into the market. When Kalani's sales of Top Ships stock caused the price of Top Ships stock to decline, the Company would reverse split the stock, causing a certain number of outstanding shares to be merged into a single share, and thereby raise the price of Top Ships stock. Then, Top Ships would again sell securities to Kalani and the same pattern of transactions would ensue.

At the same time that Top Ships was engaging in these transactions, defendants failed to disclose the true purpose of the transactions and related stock issuances and reverses – to provide Top Ships with financing to engage in a variety of related-party transactions, transactions that primarily benefited Pistiolis and his related companies, and otherwise funnel money to Company insiders.

(Brady Compl. ¶¶ 19-20; Narine Compl. ¶¶ 4-6.)

Both complaints allege that defendants made false and misleading statements in SEC filings, including by failing to disclose their alleged fraudulent scheme to manipulate the Top Ships common stock price. (*See, e.g.*, Brady Compl. ¶¶ 22-23; Narine Compl. ¶¶ 27-28.) The complaints discuss numerous SEC filings, including the Top Ships Registration Statement, filed on January 17, 2017, in which defendants "misleadingly touted purported 'anti-dilutive' protections designed to protect shareholders" (Brady Compl. ¶¶ 21-24; Narine Compl. ¶¶ 26-29); the February 2017 Prospectus Supplement, in

3

which the Company announced the issuance and sale of over $3.1 million worth of shares to Kalani, and described a purchase agreement between Kalani and Top Ships (the "Stock Purchase Agreement"), under which

> the Company would sell to Kalani its common shares at a substantial discount to market price pursuant to a convoluted, variable formula, the details of which left much to the undisclosed discretion of Kalani and Company insiders and was designed to allow defendants to obscure the true magnitude of potential dilution and risk of economic loss to the Company's outside shareholders

(Brady Compl. ¶ 25; Narine Compl. ¶ 30); and subsequent Form 6-Ks, a Warrants Amendment, and prospectus supplements (*e.g.*, Brady Compl. ¶¶ 27-53; Narine Compl. ¶¶ 32-59).

The complaints discuss disclosures of acquisitions and sales of shares during this period, as well as declines in the price of common stock, shareholder meetings, and approvals of reverse stock splits. (Brady Compl. ¶¶ 49-67; Narine Compl. ¶¶ 54-74.) Among the aforementioned SEC filings, both complaints discuss the May 10, 2017 Form 6-K report announcing a 20-for-1 reverse stock split, intended to offset the decline in stock price to 91% below the closing price when the Stock Purchase Agreement was first announced in February 2017 (Brady Compl. ¶¶ 49-50; Narine Compl. ¶¶ 54-55), as well as additional Form 6-Ks reporting reverse stock splits, intended to offset losses to shareholders, on June 22, August 2, and August 8, 2017 (Brady Compl. ¶¶ 56-57, 60-61, 64; Narine Compl. ¶¶ 62-63, 66-67, 70). Plaintiffs allege that information contained in the August 8, 2017 Form 6-K indicated that the number of Company shares issued and outstanding had approximately tripled in about three weeks. (Brady Compl. ¶ 64; Narine Compl. ¶ 70.) Further, in light of the value of stock remaining under the Stock Purchase Agreement with Kalani, this report allegedly signaled that "the market manipulation and massive share dilution would continue." (Brady Compl. ¶ 64; Narine Compl. ¶ 70.)

In addition to the overlapping allegations as to defendants' fraudulent actions, both complaints allege the same resulting harm: "the scheme would ultimately result in shareholders losing more than 99% of the value of Top Ships' shares in a matter of months." (Brady Compl. ¶ 22; Narine Compl. ¶ 27.)

B. Motions for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Counsel

On October 23, 2017, six separate movants filed motions (1) to consolidate the related actions, (2) for appointment as lead plaintiff, and (3) for approval of their selection of lead counsel. (ECF Nos. 31-47.) The following four movants subsequently submitted letters withdrawing (or effectively withdrawing) their motions: (1) Anthony Nguyen, on October 30, 2017 (ECF No. 51), (2) Tomy Lukose, on November 6, 2017 (ECF No. 52), (3) Carla Byrd and Todd Loccisano, on November 6, 2017 (ECF No. 54), and (4) Joseph M. Petite and Martine-Vivianne Petite (the "Petites"), on November 6, 2017 (ECF No. 56). Nguyen stated outright that he withdrew his motion. (ECF No. 51 at 2.) Lukose submitted a "response" to the competing motions, in which he did not explicitly withdraw, but implied as much by recognizing, first, the PSLRA presumption that "the most adequate plaintiff . . . has the largest financial interest in the relief sought by the class," and, second, that it appeared that he did not possess the largest financial

4

interest.[5] (ECF No. 52 at 1.) Byrd and Loccisano submitted a "notice of non-opposition" to the competing motions, similarly stating that they do not possess the largest financial interest, and, "[a]s such . . . do not oppose the competing motions." (ECF No. 54 at 1.) The Petites submitted a "response" in which they "concede that the[y] . . . are not the presumptive Lead Plaintiffs under the PSLRA" for the same reason. (ECF No. 56 at 1.)

In withdrawing, none of the plaintiffs expressed support for a specific remaining movant group. Lukose indicated that "should the Court determine that the other lead plaintiff movants with larger losses than Mr. Lukose are incapable of representing or inadequate to represent the class in this litigation, Mr. Lukose continues to be willing and able to serve as lead plaintiff." (ECF No. 52 at 1.) Byrd and Loccisano and the Petites echoed this statement indicating their continued willingness to serve as lead plaintiff in their respective responses. (ECF No. 54 at 1; ECF No. 56 at 1.)

The two remaining movant groups, Top Ships Investor Group and Nardiello and Wang, each twice reiterated their positions established in their initial motion papers: on November 6, 2017, both groups filed memoranda in further support of their motions, and opposing the competing motions (ECF No. 53 (Top Ships Investor Group); ECF No. 55 (Nardiello and Wang)); and on November 13, 2017, both filed their replies (ECF No. 57 (Top Ships Investor Group); ECF No. 58 (Nardiello and Wang)).

The Court has fully considered the parties' submissions.[6]

## II. DISCUSSION

A. Motions to Consolidate Related Cases

Rule 42(a) of the Federal Rules of Civil Procedure provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions; or . . . issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). The district court has broad discretion to determine whether consolidation is appropriate. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990). Although "considerations of judicial economy favor consolidation," on the other hand, "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *Id.* at 1285. In determining whether consolidation is appropriate, the court must consider:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time

---

[5] Lukose also filed the sole motion for consolidation of the related actions and appointment as lead plaintiff in *Narine*. (*Narine*, ECF No. 17.) Lukose filed his motions for consolidation and appointment as lead plaintiff in *Narine* and the instant action on the same day (October 23, 2017).

As discussed *supra*, after submitting his motions for consolidation and appointment, Lukose filed a response to the other motions in this action that effectively withdrew his motion. In light of (1) Lukose's motions to consolidate these actions, and (2) the fact that he did not submit additional filings in *Narine* indicating his continued interest in serving as lead plaintiff in that action after withdrawing in *Brady*, the Court accepts Lukose's *Brady* response as withdrawing his motion for appointment as lead plaintiff in the consolidated actions. In any event, his motion for appointment as lead plaintiff would be unsuccessful for the same reasons as set forth with respect to Nardiello and Wang, as discussed *infra*.

[6] *Brady* and *Narine* were initially assigned to Judge Joan M. Azrack, who recused herself from both actions. (ECF No. 60; *Narine*, ECF No. 18.)

5

required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* (alterations in original) (citation omitted). The Court has considered each of these factors and finds that, in light of the highly similar allegations and claims in the two putative class actions against defendants, consolidation is appropriate in order to serve the interests of judicial economy. *See, e.g.*, *Jacobs v. Castillo*, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009) ("Consolidation would further the goal of 'judicial economy' because discovery in each case is likely to be identical, [and] motion practice and trial in the two cases would most likely cover the same facts and some identical issues of law."). In cases involving common questions of law or fact, courts favor consolidation "to avoid unnecessary costs or delay," *Johnson*, 899 F.2d at 1284, and to "expedite trial and eliminate unnecessary repetition and confusion," *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (citation omitted).

Here, all movants in both actions have expressed support for consolidation, and defendants have not opposed.[7] The Top Ships Investor Group argues that "[t]he Related Actions at issue here clearly involve common questions of law and fact" and "allege substantially the same wrongdoing." (ECF No. 43 at 4.) Similarly, Nardiello and Wang argue that the cases "name the same defendants and involve the same factual and legal issues."[8] (ECF No. 46 at 2.) The Top Ships Investor Group emphasizes that central to both complaints are allegations that "defendants issued materially false and misleading statements and omissions that artificially inflated the price of the Company's securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged." (ECF No. 43 at 4.)

Based on its review of the complaints, the Court agrees with the two remaining movant groups' assessments that these cases involve common questions of law and fact. In particular, the Court notes that both complaints include the same proposed class period, point to the same SEC filings, shareholder meetings, reverse stock split approvals, and stock price declines, and contain overlapping claims regarding defendants' alleged scheme and plaintiffs' resulting losses. The *Brady* complaint contains an additional claim that is not in the *Narine* complaint, but defendants have not opposed consolidation on this basis, and the Court concludes considerations of convenience and economy supporting

---

[7] Plaintiff Brady has not submitted any letters to the Court regarding consolidation with *Narine*. On October 12, 2017, Brady submitted a letter requesting consolidation of his case with a previously-filed action, *Silverberg v. DryShips Inc.*, E.D.N.Y, Case No. 17-cv-4547 (SJF)(ARL), which is currently pending before Judge Sandra J. Feuerstein. (ECF No. 25.) On October 25, 2017, Judge Azrack denied this request for consolidation with *Silverberg*. Brady did not mention *Narine* in the letter regarding consolidation with *Silverberg*, even though *Narine* was also pending at the time, and has not since filed any additional letters regarding consolidation. On October 20, 2017, Brady submitted a letter indicating that he would file for appointment as lead plaintiff on October 23, 2017 (ECF No. 29), but he never made this motion.

Plaintiff Narine has also not filed any letters regarding consolidation with *Brady*, nor, for that matter, with any other action. Nor has Narine filed a motion for appointment as lead plaintiff.

[8] Given that the two remaining motions for consolidation—after the other movants withdrew their motions—were filed in *Brady*, the Court focuses on the arguments made in filings in this case. The Court notes, however, that Lukose made similar arguments for consolidation in the motion he filed in *Narine*, discussed *supra*. (*Narine*, ECF No. 17-1 at 1-2.)

consolidation outweigh any difference in the cases created by this additional claim. In other words, the additional claim for a violation of § 9 of the Exchange Act does not alter the Court's conclusion that the two cases involve common questions of law or fact, as the § 9 claim is premised on the same allegations that plaintiffs suffered damages as a result of defendants' scheme to manipulate the Top Ships stock price and induce the purchase of Top Ships stock through false and misleading statements. (Brady Compl. ¶¶ 86-89.) Finally, again looking to considerations of judicial economy, the Court finds that the fact that both actions involve the same set of defendants weighs in favor of consolidation. (*Id.*) Therefore, in light of the Court's independent determination that consolidation is appropriate, as well as the parties' support for consolidation, the Court grants the motions to consolidate.

B. Motions to Appoint Lead Plaintiff

1. Applicable Law

The PSLRA sets forth the following standard for selecting a lead plaintiff in a federal securities class action: "the court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff')." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA establishes that courts shall adopt a presumption that the "most adequate plaintiff" is the class member or group that:

(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii). This presumption can be rebutted "only upon proof" by a class member that the movant for appointment as lead plaintiff: (1) "will not fairly and adequately protect the interests of the class," or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.*

Additionally, the PSLRA provides that (1) the plaintiff(s) who filed the complaint shall publish a notice advising members of the purported class of the pendency of the action "[n]ot later than 20 days after the date on which the complaint is filed," and (2) "not later than 60 days after the date on which the notice is published, any member of the purported class" may move to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(A)(i). In cases where multiple actions were filed, only the plaintiff or plaintiffs in the first-filed action are required to publish a notice. *Id.* § 78u-4(a)(3)(A)(ii).

2. Analysis

a. Aggregating Plaintiffs for Selection as Lead Plaintiff

Before turning to the three requirements laid out in the PSLRA, the Court addresses the threshold issue of whether the Top Ships Investor Group should be permitted to aggregate individual members' financial losses for purposes of appointment as lead plaintiff—the main issue that Nardiello and Wang dispute. They argue that the Top Ships Investor Group is "comprised of three 'complete strangers'" and is a "lawyer-created group of unrelated investors who were cobbled together 'in the hope of thereby becoming the biggest loser for PSLRA purposes,' a tactic disapproved of by this Court." (ECF No. 55 at 1 (quoting *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 190 (S.D.N.Y. 2006)).)

7

Additionally, Nardiello and Wang claim that the Top Ships Investor Group has already "demonstrate[d] an inability to supervise counsel and adequately protect the interests of the class." (*Id.* at 2.) The Court has considered these arguments and the Top Ships Investor Group's submissions supporting their motion, and finds that the Top Ships Investor Group's proposed aggregation of individual investors is appropriate.

As Nardiello and Wang state, "[o]ne of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation." (*Id.* at 4 (quoting *In re Tarragon Corp. Sec. Litig.*, No. 07 CIV 7972(PKC), 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007)).) Where the PSLRA allows for unrelated investors to join together, courts will review these groups "'on a case-by-case basis,' 'if such a grouping would best serve the class.'" (*Id.* (quoting *In re CMED Sec. Litig.*, No. 11 Civ. 9297(KBF), 2012 WL 1118302, at *2 (S.D.N.Y. Apr. 2, 2012)).) In deciding whether to allow the aggregation of individual shareholders for appointment as lead plaintiff, courts have considered the following factors: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." (*Id.* at 5 (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)).)

Although the PSLRA clearly allows a group of class members to join together for selection as lead plaintiff, Nardiello and Wang correctly note that courts have been resistant to appointing lead plaintiff groups that appear to lack a pre-litigation relationship and plans for coordination, or to be lawyer-driven, among other factors weighing against aggregation. (*Id.* at 3-5); *see also Varghese*, 589 F. Supp. 2d at 392-93. Here, Nardiello and Wang argue that "[t]he Top Ships Investor Group is an amalgamation of three unrelated investors who have nothing in common except that they claim to have suffered losses on their purchases of Top Ships stock." (ECF No. 55 at 3.) They further assert that the group members appear to have no pre-existing relationship—"none has been described in their Certifications or their Joint Declaration"; they make only "conclusory representations" in their joint declaration regarding their plans for cooperation and coordination; the declaration contains no information about the members' sophistication; and it appears that counsel selected the members rather than vice versa. (*Id.* at 6.) Nardiello and Wang also specifically raise that the Top Ships Investor Group's joint declaration "(i) does not identify a single member of the Top Ships Investor Group by name (instead simply stating 'We, the undersigned'); and (ii) includes a separate signature page for each of its members, all of which are undated." (*Id.* at 7.) Based on these facts, Nardiello and Wang argue that the Court can conclude that "the final size and membership of the group was not even fully decided" by the time the members signed their purportedly joint declaration, and, by extension, that the members are "not directing the litigation or adequately supervising their counsel." (*Id.*)

This Court recognizes the risk of approving lead plaintiff groups without evidence of their cohesion and plans for involvement in the litigation. Here, however, the Court finds that the Top Ships Investor Group is not the type of lawyer-driven group that other courts have cautioned against approving, and has sufficiently demonstrated its members' plans for cooperation and involvement in the litigation for the Court to

8

find this group will best serve the class. Additionally, based on the two remaining movant groups' submissions, the Court has compared the adequacy of both proposed groups, and finds that Nardiello and Wang's arguments do not justify departing from the presumption in favor of the group with the largest financial interest (the Top Ships Investor Group).

*Peters v. Jinkosolar Holdings, Co.* provides a good model for comparing competing lead plaintiff groups. No. 11-7133, 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012). In *Peters*, the court responded to the argument that a proposed lead plaintiff group, comprised of individual investors, had failed to explain how it formed or how it would act cohesively in managing the litigation. *Id.* at *5. In resolving this issue, the court began by noting that the PSLRA itself "plainly contemplates the appointment of a group of individuals as lead plaintiff." *Id.* at *6 ("The Act directs the Court to 'appoint as lead plaintiff the member or *members* of the purported plaintiff class . . . .'" (emphasis added in *Peters*) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i))). The court next discussed cases in which courts have "expressed particular concern when potential lead plaintiff groups appear to have been 'cobbled together' for the sake of the litigation," and concluded that "three basic factors are relevant to the inquiry: (1) the size of the group; (2) the relationship between the parties; and (3) any evidence that the group was formed in bad faith." *Id.* at *7. Bad faith in this context meant, essentially, "cobbled together" solely for the purpose of serving as lead plaintiff. *Id.* With regard to size, the *Peters* court explained that there was no set number of members that would qualify as "relatively small and therefore presumptively cohesive," but that "courts appear to generally agree that a group comprising five or fewer members is appropriate." *Id.* (citations omitted). Next, the court provided examples of the types of evidence groups can present to demonstrate cohesion:

> [E]vidence regarding why the individual members chose to work as a group; how the group intends to function collectively, including how they plan to communicate; the protocol the group will use to address disagreements; background information regarding individual members of the group; and the members' willingness to accept the role and responsibilities of lead plaintiff.

*Id.* (citations omitted).

Likewise, this Court has examined these features of the Top Ships Investor Group. Here, size weighs in the group's favor: with only three members, the Top Ships Investor Group is of the size that courts have generally found likely to be cohesive. *Peters*, 2012 WL 946875, at *7. Next, as discussed in *Peters*, the Top Ships Investor Group submitted a joint declaration in which the members provided evidence of their ability to cohesively manage the litigation. In particular, they made the following statements about their plans to work as a group and oversee their selected lead counsel: (1) the Top Ships Investor Group members "understand the requirements and duties imposed by the PSLRA" on lead plaintiffs; (2) they are "like-minded investors who suffered substantial losses in their investments in Top Ship securities" and, as such, "decided to seek joint appointment as Lead Plaintiff"; and (3) they "understand and appreciate the Lead Plaintiff's obligation . . . to select Lead Counsel and to monitor the action to ensure it is prosecuted efficiently," and, in keeping with this responsibility, they selected lead counsel "with a proven history of handling this type of complex litigation," and will "continue to supervise counsel and actively oversee the prosecution of this action

9

for the benefit of the class by, among other things, reviewing pleadings, instructing counsel, and/or attending hearings, as necessary." (ECF No. 44-4 at 1-2.)

The Court finds that, although the Top Ships Investor Group's declaration falls short of some more detailed submissions demonstrating plans for joint case management in these types of cases, the declaration and the group's subsequent briefing demonstrate that the group is sufficiently cohesive to pass this threshold. The Top Ships Investor Group's small size strengthens the Court's confidence in the group's ability to serve as lead plaintiff. The group's declaration demonstrates its members' commitment to overseeing the work of their selected counsel, first by stating this obligation, then by providing examples of the types of actions group members will take in fulfilling this responsibility (for instance, reviewing pleadings and attending hearings). As discussed in *Peters*, the Top Ships Investor Group members explained why they chose to work together—they are like-minded investors who suffered substantial losses—and provided specific information about each of the members' losses. (ECF No. 44-3.)

The Top Ships Investor Group members could have provided further evidence of their group's cohesion by describing plans for communicating and resolving any disputes that should arise, as Nardiello and Wang point out. Although the Court agrees that this information would be helpful, it is not required under the circumstances of this case. Moreover, the Court was not left with the impression that one group would be more cohesive than the other based on their respective submissions. Nardiello and Wang provide greater detail about their plans for joint oversight, stating that they "plan to communicate with each other through email and by telephone" (ECF No. 47-4 ¶ 9), but little else in their declaration better conveys plans for joint case management. The two groups make similar statements about their willingness to monitor counsel. (*Compare* ECF No. 47-4 at 2, *with* ECF No. 44-4 at 1-2.) Finally, Nardiello and Wang provide no more information about plans for dispute resolution than the Top Ships Investor Group.

Turning to another factor bearing on group cohesion, the Court is not convinced that Nardiello and Wang's purported pre-litigation relationship is actually more substantial than that of the Top Ships Investor Group members. Nardiello and Wang's declaration is slightly longer, but in reality provides little additional information about their relationship. Nardiello and Wang write that, before contacting their selected lead counsel, "[w]e met through our mutual investments in Top Ships stock and have exchanged communications with each other regarding our respective losses and strategies for seeking recovery for these losses." (*Id.* ¶ 5.) This "pre-existing relationship" appears to the Court to be identical to that of any other proposed lead plaintiff group who, as the Top Ships Investor Group explained, is comprised of individual investors who suffered losses and, as such, "decided to seek joint appointment as Lead Plaintiff." (ECF No. 44-4 ¶ 3.) The court in *In re Blue Apron Holdings, Inc. Sec. Litig.* provided a similar assessment of the groups before it in appointing the presumptive four-member lead plaintiff group, rather than another proposed two-member group, stating that:

> [T]he only apparent distinction between the two groups is their size, as none of the proposed lead plaintiffs claim to have any relationship with one another beyond their participation in this litigation, much less a meaningful one. Consequently, they appear to be equally qualified to serve as lead plaintiffs on the basis of

10

their representations to the Court, as neither group is so large as to be unwieldy and impracticable, and each avers it is prepared to work cooperatively to serve the best interests of the class.

No. 17-CV-4846-WFK-PK, 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017). Effectively, what both movant groups in the instant case explain is that they selected counsel, rather than vice versa. *Varghese*, 589 F. Supp. 2d at 392; *see also Peters*, 2012 WL 946875, at *8 (appointing a lead plaintiff group even where "it [wa]s apparent that the group was formed with the assistance (if not at the instigation) of counsel").

For all of these reasons, the Court finds no substantial difference in the proposed lead plaintiff groups' respective evidence of their cohesion. The Court finds that the Top Ships Investor Group has adequately demonstrated its members' commitment to working together to oversee counsel in prosecuting the litigation. The Court, therefore, accepts the Top Ships Investor Group's proposed aggregation for purposes of appointing lead plaintiff.

b. Qualifying as a Movant

The Court next considers the first statutory requirement: whether movants either filed the complaint or made a motion in response to a notice of pendency of this action. 15 U.S.C. § 78u-4(a)(3)(B)(i). Brady, as the plaintiff in the first-filed action, was the only plaintiff required to publish a notice of pendency, and he satisfied the requirement to publish this notice within 20 days of filing the complaint. (*Id.* § 78u-4(a)(3)(A); ECF Nos. 1, 44-1.) Then, as required, the Top Ships Investor Group and Nardiello and Wang both moved for appointment as lead plaintiff within 60 days of the date counsel for Brady published the notice. (15 U.S.C. § 78u-4(a)(3)(A); ECF Nos. 42-44, 45-57.) The Top Ships Investor Group and Nardiello and Wang have, therefore, both satisfied the first statutory requirement for a lead plaintiff.

c. Largest Financial Interest

The Court must next determine which of the two movant groups has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Although the PSLRA does not provide further guidance, courts in the Second Circuit typically apply the "*Lax* factors," or "*Lax/Olsten* factors" in making this assessment. *See, e.g.*, *Varghese*, 589 F. Supp. 2d at 395 (citing *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)); *Blue Apron Holdings*, 2017 WL 6403513, at *3. Under *Lax/Olsten*, courts consider the following factors: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re Olsten Corp.*, 3 F. Supp. 2d at 295 (citing *Lax*, 1997 WL 461036, at *5). The last factor, losses suffered during the class period, is considered to be the most important. *Blue Apron Holdings*, 2017 WL 6403513, at *3 (citing *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015)); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008).

Here, based on the two movant groups' submissions, it is clear that the Top Ships Investor Group has the largest financial interest. The Top Ships Investor Group alleges that, during the class period, it acquired more than 737,144 shares of Top Ships securities, expended $536,086 on its purchases of Top Ships securities, and "as a result of the disclosures of the fraud, suffered

11

a loss of approximately $384,793 in connection with its transactions in Top Ships securities." (ECF No. 43 at 7; ECF No. 44-3.) Nardiello and Wang, by comparison, allege that they "expended nearly $500,000 on Top Ships common stock during the class period, and suffered over $321,716 in losses as a result of defendants' alleged misconduct." (ECF No. 46 at 4; ECF No. 47-3.) As a group, the Top Ships Investor Group's losses exceeded those of Nardiello and Wang by $63,075, or approximately 20%.

Nardiello and Wang did not put forward any arguments as to why the Court should assign greater weight to a *Lax* factor other than loss, and funds expended and loss were the only figures they included in support of their motion for appointment as lead plaintiff. (ECF No. 46 at 4); *see Blue Apron Holdings*, 2017 WL 6403513, at *3 (determining "largest financial interest" based on the parties' representations as to their approximate losses, which the court found to be "an appropriate proxy for the movants' overall financial interest" because the parties focused their arguments on those figures and did not argue that any other factor should weigh more heavily). Both of these figures clearly weigh in favor of appointing the Top Ships Investor Group.

In their opposition, Nardiello and Wang argue that each of the Top Ships Investor Group members individually sustained a smaller loss than Nardiello alone. (ECF No. 55 at 3.) The Top Ships Investor Group does not contest this point. The losses of each of the members of the two groups were the following: Nardiello ($201,349), Wang ($120,367), Moshe Onel ($188,525), Amardeep Sidhu ($106,044), Joel Sofer ($90,224). (*Id.*; ECF No. 53 at 4.) Nardiello and Wang argue that "the only way the Top Ships Investor Group can claim a larger financial interest than Nardiello and Wang is by aggregating their losses." (ECF No. 55 at 3.) As discussed *supra*, however, such aggregation of group members' financial losses is appropriate and, thus, the fact that Nardiello and Wang as a group have the greatest individual member loss does not rebut the presumption in favor of the Top Ships Investor Group.[9]

Thus, the Court finds that, based on its assessment of the fourth and most important factor, as well as the four *Lax*/*Olsten* factors together, the Top Ships Investor Group has the largest financial interest.

d. Rule 23 Requirements

In addition to meeting the first two requirements, the Court finds that the Top Ships Investor Group has made a preliminary, prima facie showing that it otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and is, therefore, presumptively the most adequate plaintiff. Rule 23 establishes that a

---

[9] In any event, the Court addresses Nardiello and Wang's argument that it should consider individual member loss. First, the Court finds significant the fact that the difference between the losses by the groups (which differed in number of members by only one person) was far greater than the difference between the largest individual member losses (comparing Nardiello's and Onel's losses, the largest losses in each group, the difference was $12,824, or approximately 7%, as opposed to a $63,075 or 20% difference between the groups). Second, the Court notes that, in keeping with the PSLRA policy allowing for aggregation of losses within lead plaintiff groups, other courts have also rejected arguments that a greater loss by an individual group member should override the presumption in favor of the *group* with the largest loss. *See Peters,* 2012 WL 946875, at *9 ("Some decisions rejecting aggregate groups have instead appointed the individual group member with the largest loss as sole lead plaintiff, but the Court sees little that would be gained by that approach here." (citing *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997))).

class action may proceed only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). At this stage, movants seeking appointment as lead plaintiff need only make a "preliminary, prima facie showing" that the typicality and adequacy requirements would be met. *Varghese*, 589 F. Supp. 2d at 397 (quoting *In re Fuwei Films*, 247 F.R.D. at 437); *Blue Apron Holdings*, 2017 WL 6403513, at *3.

The typicality requirement is met where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992) (citations omitted). Courts in this circuit have clarified, however, that a lead plaintiff's claims "need not be identical" to the claims of the class, and that "similarity of legal theory may control even in the face of differences of fact." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004) (citation omitted). The Top Ships Investor Group argues that the typicality requirement is satisfied because, like the proposed class, (1) the Top Ships Investor Group alleges that "defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning the Company, or omitted . . . material facts necessary to make the statements they did make not misleading," and (2) the Top Ships Investor Group "purchased Top Ships securities during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions." (ECF No. 43 at 8.) The Court finds that the Top Ships Investor Group has made the requisite prima facie showing that the lead plaintiff and class claims arise from the same course of events—the purchase of Top Ships securities in reliance on defendants' alleged misleading statements or omissions—and are based on similar legal arguments surrounding defendants' violation of the federal securities laws and the resulting harms.

In order for a lead plaintiff to satisfy the Rule 23 adequacy requirement, "(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation." *In re Fuwei Films*, 247 F.R.D. at 436 (citation omitted). The lead plaintiff should also "have a sufficient interest in the outcome to ensure vigorous advocacy." *Id.* (citation omitted). The Top Ships Investor Group argues that it satisfies both of the aforementioned adequacy requirements because (1) "[t]here is no antagonism between the interests of the Top Ships Investor Group and those of the Class," and (2) "the Top Ships Investor Group has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions." (ECF No. 43 at 9- 10.) The Top Ships Investor Group explains that "its losses demonstrate that it has a sufficient interest in the outcome of this litigation." (*Id.* at 9.) Additionally, the Top Ships Investor Group reiterates that the group is adequate because its members "understand their responsibilities as class representatives and are prepared to oversee counsel and diligently prosecute this litigation for the benefit of the class." (*Id.*) The Court finds

13

that the Top Ships Investor Group has made a sufficient showing at this stage of its adequacy to represent the proposed class.

> e. Most Adequate Plaintiff Presumption Has Not Been Rebutted

Nardiello and Wang have not rebutted the presumption that the Top Ships Investor Group is the most adequate plaintiff by demonstrating that the Top Ships Investor Group would not "fairly and adequately protect the interests of the class," 15 U.S.C. § 78u-4(a)(3)(B)(iii), as discussed *supra*. Nor have Nardiello and Wang demonstrated that the Top Ships Investor Group "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." [10] *Id.* Nardiello and Wang focus primarily on the alleged issues with aggregating the individual plaintiffs in the Top Ships Investor Group (discussed *supra*), and fail to provide any persuasive argument that the Top Ships Investor Group is not the most adequate plaintiff.

C. Motions to Appoint Lead Counsel

The PSLRA states that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u-4(a)(3)(B)(v). As the Court now grants the Top Ships Investor Group's motion for appointment as lead plaintiff, it also considers the Top Ships Investor Group's selection of lead counsel, Pomerantz. The PSLRA provides no further instruction regarding the approval of lead counsel.

Courts have correctly found that the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008) (citation omitted), *aff'd sub nom. Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82 (2d Cir. 2010). Here, the Top Ships Investor Group states that Pomerantz is "highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors," and that the Court may, therefore, "be assured that by approving the selection of Lead Counsel by the Top Ships Investor Group, the members of the class will receive the best legal representation available." (ECF No. 43 at 10-11.) Based on the Top Ships Investor Group's representations, the Court approves Pomerantz as lead counsel.

---

[10] The Top Ships Investor Group argues that Nardiello and Wang would be subject to a unique defense that could render this proposed group incapable of adequately representing the class: that Nardiello and Wang did not hold any Top Ships securities at the time of any of the alleged corrective disclosures in these actions, and thus could be found to lack standing to represent the class under *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), and its progeny. (ECF No. 53 at 7.) Given that the Court has already determined that the Top Ships Investor Group is the most adequate plaintiff, and that the Court will grant its motion (and deny Nardiello and Wang's motion), the Court need not consider other potential flaws in Nardiello and Wang's proposed lead plaintiff group.

## III. CONCLUSION

For the foregoing reasons, the Court grants the motions to consolidate *Brady* and *Narine*, appoints the Top Ships Investor Group as lead plaintiff, and approves the Top Ships Investor Group's selection of Pomerantz as lead counsel.

SO ORDERED.



JOSEPH F. BIANCO
United States District Judge

Dated: July 20, 2018
Central Islip, New York

\*\*\*

Plaintiff Brady is represented by David Avi Rosenfeld and Samuel H. Rudman of Robbins Geller Rudman & Dowd, LLP, 58 South Service Road, Suite 200, Melville, New York 11747.

Plaintiff Narine is represented by J. Alexander Hood, Joseph Alexander Hood II, and Jeremy A. Lieberman of Pomerantz LLP, 600 Third Avenue, 20th Floor, New York, New York 10016; Patrick V. Dahlstrom of Pomerantz LLP, 10 South La Salle Street, Suite 3505, Chicago, Illinois; and Peretz Bronstein of Bronstein, Gewirtz & Grossman, LLC, 60 East 42nd Street, Suite 4600, New York, New York 10165.

The Top Ships Investor Group is represented by Jeremy A. Lieberman and J. Alexander Hood II of Pomerantz LLP (address above).

Nardiello and Wang are represented by David Avi Rosenfeld of Robbins Geller Rudman & Dowd, LLP (address above).

Defendant Top Ships and the Top Ships Officer Defendants and are represented by Jenny R. A. Pelaez, Jeremy Adler, and Michael G. Bongiorno of Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007; and Peter Kolovos of Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, Massachusetts 02109.

Defendants Murchinson Ltd. and Bistricer are represented by Noah Nehemiah Gillespie and Peter H. White of Schulte Roth & Zabel LLP, 1152 15th Street Northwest, Suite 850, Washington, D.C. 20005.[11]

---

[11] No Notice of Appearance has been filed on behalf of defendant Kalani Investments Limited.